JOHN T. WILLIAMSON, Respondent, *v.* JOHN CASA-EGUIA
Appellant, Impleaded with Another.

(Argued January 14, 1930; decided February 11, 1930.)

*Edward E. Franchot* for appellant. The court may not read into a writing by implication an intention of the parties not expressly stated therein but presumed to exist as a matter of fact and exclude all testimony tending to negative such intention or hold, as a matter of law, that there is an irrebuttable presumption of law irrespective of the actual intention of the parties that the defendant agreed not to appropriate to his own use collateral for one of several notes. (*Barney* v. *Forbes*, 118 N. Y. 580; *Burritt* v. *Palmer-Marcy Co.*, 236 N. Y. 135; *Studwell* v. *Bush Co.*, 206 N. Y. 416; *Thomas* v. *Scutt*, 127 N. Y. 133; *Matter of Canfield*, 190 Fed. Rep. 266; *Whipple* v. *Brown Bros. Co.*, 225 N. Y. 237.) Respondent's claim that the errors of the trial court in excluding testimony have been cured or waived by the introduction of the excluded testimony in another form is not valid. (*Barber* v. *Ellingwood*, 137 App. Div. 702; *Silberstein* v. *Silberstein*, 218 N. Y. 525; *Shaw* v. *Broadbent*, 129 N. Y. 114; *Rose* v. *Hawley*, 133 N. Y. 315.)

*Frank Gibbons* for respondent. The decision of the trial court excluding oral testimony was right. (*Traders National Bank* v. *Laskin*, 207 App. Div. 18; 238 N. Y. 535; *Holloran* v. *N. & C. Contracting Co.*, 249 N. Y. 381; *Mitchell* v. *Lath*, 247 N. Y. 377; *Lyon Brewery* v. *Loughran*, 223 App. Div. 623; *Kelly* v. *Ruppert*, 173 App. Div. 116; *Lyon Brewery* v. *Fricke*, 204 App. Div. 470; *Ruppert* v. *Singhi*, 243 N. Y. 156.)

CRANE, J. The plaintiff, John T. Williamson, is a resident of Niagara Falls, and an ice merchant. He has been president of the Cataract Ice Company, and of the Niagara County Savings Bank. He has been in the ice business all his life. A rival ice company was owned by

the defendants. It was known as the Niagara Falls Manufacturing and Storage Company. The capital stock consisted of 1,500 shares, of which John Casa-Eguia owned 780 shares, and Herbert M. Pease owned 720. Pease proposed to Williamson that he buy them out. An offer was made and accepted, and the deal closed on December 1, 1922. The defendants sold their stock to the plaintiff. The value of the stock depended upon the assets of the corporation. Right after the deal was consummated and the money paid, the defendant Casa-Eguia seized $25,000 worth of second mortgage bonds belonging to the corporation, and appropriated them to his own use. At least this was the claim of the plaintiff, who, in a few days after taking possession of the corporation which he had purchased, discovered the fact and made demand for the return of the property. This action was brought to recover the damages which the plaintiff sustained in the lessened value of his stock by reason of this misappropriation, or unwarranted seizure of the corporate property. Whether this claim of Williamson is true was the question litigated on the trial. The defendant Casa-Eguia admitted taking the bonds, but as a defense claimed that it was with the consent of the plaintiff and part of the agreement of purchase that he should keep them. The trial court ruled out this defense upon the ground that the contract for the purchase of the stock of the Niagara Falls Ice Manufacturing and Storage Company was in writing and would be varied or changed by the evidence of Casa-Eguia. This ruling is presented to us as error requiring reversal.

The books of the corporation show that it owned and possessed at the time of these transactions $50,000 of second mortgage bonds which were in the treasury of the corporation. The defendants had borrowed money for the corporation at the Power City Bank. The note was made by the corporation and indorsed by Casa-Eguia and his wife. It had been reduced to $16,000. The bank

held $25,000 of these second mortgage bonds as security for the note.

The company also had other notes outstanding — four notes aggregating $39,000, payable to the Peoples Bank of Niagara Falls.

With these facts before them, Casa-Eguia made his offer or proposition in writing November 29, 1922, in part reading as follows:

> "*November 29th*, 1922.
>
> "Mr. JOHN T. WILLIAMSON,
>
> > "c/o CATARACT ICE COMPANY,
> >
> > > "821 Cedar Avenue.
> > >
> > > > "Niagara Falls, New York.
>
> "DEAR SIR.— I hereby offer to sell to you 780 shares of the common stock of Niagara Falls Ice Manufacturing & Storage Company, and to pay all outstanding notes of the Niagara Falls Ice Manufacturing & Storage Company except four notes made by the company payable to Peoples Bank of Niagara Falls for $4,000, $5,000, $5,000 and $25,000, dated November 29th, 1922, November 29, 1922, November 8th, 1922, and July 1st, 1921, respectively, for $67,500 in cash.
>
> "The total authorized issue of the capital stock of Niagara Falls Ice Manufacturing & Storage Company is 1500 shares, of which Mr. Pease owns 720 and I own 780 shares. Immediately upon the acceptance of this offer, a directors' meeting will be called. * * *
>
> > "Yours very truly,
> >
> > > "J. CASA EGUIA.
>
> "The above proposition is accepted.
>
> > "12/1/22 JOHN T. WILLIAMSON."

As above stated, the sale was consummated on December 1, 1922, and the price paid by Williamson. At the time these negotiations were going on with Williamson, Casa-Eguia procured from his codefendant, the only other stockholder, consent that he take the $25,000 of second mortgage bonds pledged with the Power City

Bank as and for his own. This was to be ratified later by the corporation, which of course was a mere empty form, as these two men owned until the sale to Williamson all the stock. The consent of the corporation meant merely writing in a book. With this consent from Pease, Casa-Eguia went to the Power City Bank, paid $16,000 and took the $25,000 of second mortgage bonds, which he immediately appropriated to his own use. If by his agreement with Williamson he was to pay the note at the Power City Bank as part of the consideration for the purchase by Williamson of the corporate stock, and thus release the lien of the bank on the $25,000 mortgage bonds in behalf of the company for the benefit of Williamson, his appropriation of the bonds was an unlawful seizure of the corporate assets. By his acts Casa-Eguia reduced the value of the corporate stock which Williamson had purchased in the amount of the value of the bonds. This was a wrong, damaging the value of the property which Casa-Eguia and Pease had sold to Williamson, and to recover which this action could be maintained. (*Matter of Auditore*, 249 N. Y. 335; *General Rubber Co.* v. *Benedict*, 215 N. Y. 18.)

On December 11, 1922, the facts were discovered by Mr. Williamson who, in behalf of the company, wrote to Casa-Eguia, demanding the return of the bonds to the treasury of the company. Casa-Eguia replied on the 15th, stating that he had purchased the bonds and refused to return them.

Was the letter of November 29, 1922, complete in itself so that any arrangement or understanding had at or before the time between Williamson and Casa-Eguia in reference to this Power City Bank note could not be explained orally? The testimony which Casa-Eguia intended to give is before us in an exhibit admitted for another purpose. " He [Williamson] says that this could be very well arranged so far as the notes at the Peoples Bank were concerned. Then the question came up of

the note at the Power City Bank. Mr. Williamson had some doubt if he could take care of this note. I then offered to pay this note personally in return for certain bonds which were left in the bank as part collateral for that note. He stated that he would be very glad to have me take up those bonds in payment for that note at the Power City Bank. He then asked me if I would hold his bonds until their maturity. He said he would relieve me of my indorsements on those notes as a condition to the sale to him of the stock at the price mentioned. He said he could not handle the note at the Power City Bank."

Should this testimony have been admitted? To repeat, it was excluded by the judge when asked of the defendant and his witnesses, for the reason that it would vary the terms of a written instrument, the letter or agreement of November 29, 1922. We are of the opinion that this evidence should have been admitted and that it does not come within the " variance " rule.

By the letter, Casa-Eguia agrees to pay all outstanding notes of the corporation, except the four held by the Peoples Bank of Niagara Falls. That means that he agreed to pay the Power City Bank note of $16,000. He did pay it. What was to become of the $25,000 of second mortgage bonds held as security? The letter of November 29th is silent on this point. Casa-Eguia was liable on this note — he and his wife, as indorsers. While it may seem far fetched that Williamson was willing that Casa-Eguia should receive $25,000 of mortgage bonds for $16,000, thereby making $9,000 profit, instead of paying the note and taking the profit himself, yet this would depend upon the value of the second mortgage bonds. But whether it be an extravaganza or not, the agreement is silent on the subject. In this respect it is incomplete. Having before us the claim of Casa-Eguia, and what he has to say about the arrangement, it does not appear to be inconsistent with the writing, or con-

trary to its terms. (*Thomas* v. *Scutt*, 127 N. Y. 133.) Would the security with the Peoples Bank of Niagara Falls go to Williamson or his company on payment of its notes with that bank? Would the security for all other outstanding notes which were to be paid by Casa-Eguia go to the latter? Here is room for argument; here is an uncertainty or ambiguity, because the agreement has nothing on the point. Where an indorser or maker of a note secured by collateral takes it up, he is entitled to the collateral as a general rule. (*National Exchange Bank* v. *Silliman*, 65 N. Y. 475, p. 479; *O'Hara* v. *Haas*, 46 Miss. 374; *Surghnor* v. *Beauchamp*, 24 La. Annual, 471.) It may be that in this case, however, the collateral at the Power City Bank by the agreement between Williamson and Casa-Eguia was to go to the corporation, the maker, discharged of the lien; that Casa-Eguia was to pay the $16,000 note as part of his agreement of sale; to pay $16,000, free the bonds and turn over his stock for $67,500 cash. A question of fact was here presented to be determined on all the evidence. The application of the parol evidence rule is at times difficult, but we feel that in this case the testimony should have been admitted.

The evidence of Casa-Eguia and his witnesses, which was excluded, appears in the printed record, so that we know of that with which we are dealing. The record of a previous trial brought by the corporation against Casa-Eguia to recover possession of the bonds was offered in evidence. The case is reported in 215 Appellate Division, 750; 243 New York, 634. The record was introduced for the purpose of showing that the issue in that case was or was not the same as that here presented to the court. It was not received in evidence or considered by the judge as testimony of the witnesses on the above point or on the nature of the agreement. The trial judge in this present case had excluded all attempts of Casa-Eguia or his witnesses to explain the arrangement or agreement about the Power City Bank security. In this

he was consistent to the end. The rulings and the exceptions are numerous. The record of the previous trial was admitted merely to disclose the issue in that case. We, therefore, cannot say that his rulings, although erroneous, were harmless. He refused to consider the testimony on the previous trial as bearing upon the issue in this case or as creating an issue. In fact, a trial judge cannot exclude the oral testimony of witnesses present in court, and admit instead thereof their printed testimony on another occasion. As the trier of facts, he must listen to the spoken word, even if repetitious, provided the witnesses are ready and willing to give their testimony. Variances, changes or additions may appear in the later testimony which will make a marked difference.

The exceptions, therefore, taken upon the trial to the exclusion of the testimony mentioned have not lost their value because of the admission of this printed record. Casa-Eguia and his witnesses should be allowed to present what they have to offer on his side of the case. Whether this testimony be true or false will then be a matter for the determination of the trial judge.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not voting.

Judgments reversed, etc.