EXECUTIVE BANK OF FORT LAUDERDALE, Respondent, v GEORGE
A. TIGHE et al., Appellants.

Second Department, December 29, 1978

## APPEARANCES OF COUNSEL

*Rogers & Wells (William W. Owens* of counsel), for appellants.

*Bertine, Hufnagel & Headley (Frank M. Headley, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

HOPKINS, J. P.

The plaintiff has recovered a judgment against the defendants on two promissory notes indorsed by them and delivered to the plaintiff. The fundamental issue raised by this appeal is whether the plaintiff's failure to perfect its security interest in certain inventory and equipment of the maker of the notes discharges *pro tanto* the defendants as accommodation parties.

Trial Term answered the question in the negative, holding that the defendants' claim of impairment of recourse (Uniform Commercial Code, § 3-606) was insufficient as a matter of law. We disagree. We find that under the circumstances of this case, plaintiff's failure to perfect its security interest unjustifiably impaired the collateral and *pro tanto* discharged the defendants.

I

The plaintiff, a Florida bank, made a business loan on January 23, 1973 evidenced by two promissory notes signed by Austin Sporting Goods, Inc., and Stuart G. Austin and Jacqueline P. Austin, husband and wife. That loan was made in order to liquidate a previous loan granted by another Florida bank and to provide financing for the corporation, of which the defendants were officers and stockholders. The defendants had been liable for the payment of the previous loan.

On February 21, 1973 the defendants signed the two notes at the office of the plaintiff. Trial Term found, and we agree, that the defendants executed the notes as accommodation makers. The loan was secured by collateral consisting of a total of 100 shares of stock of Harris-Intertype Corporation

and Harris-Seybold Company, owned by the defendants, and the inventory and equipment of Austin Sporting Goods, Inc.

Sometime later—on April 5, 1973—the plaintiff filed a financing statement with the Clerk of Broward County, Florida, with respect to the inventory and equipment of Austin Sporting Goods, Inc. It is conceded on this appeal that the filing was defective and did not perfect the plaintiff's lien on the property of the corporation.*

On January 7, 1974 Austin Sporting Goods, Inc., filed a petition in bankruptcy, and default on the notes thereafter occurred. In the bankruptcy proceedings the plaintiff's lien was declared void on account of plaintiff's failure to perfect its security interest and, as a result, the plaintiff as a general creditor received but the sum of $660.02 as a dividend in the bankruptcy proceedings.

This action to recover the balance due under the notes followed. Several defenses, including the issue of impairment of the collateral through the plaintiff's failure to file a financing statement, were interposed by the defendants. After trial the defenses (and a counterclaim) were dismissed and judgment in favor of the plaintiff was directed.

## II

On this appeal the defendants seek reversal or modification of the judgment on three grounds: (1) that the fine print of the provisions in the notes on which the plaintiff relies to excuse its failure to secure the collateral renders those provisions unenforceable; (2) that those provisions do not, in any event, excuse the plaintiff and, accordingly, the defendants are discharged by plaintiff's inaction; and (3) the judgment computes interest due inaccurately and does not provide for the return of the stock pledged by the defendants as collateral.

We find no merit to the defendants' contention concerning the print of the notes. In effect, the defendants complain that the type is too small, the language convoluted, the lines compressed and the notes in large part illegible. There are cases in which the fine print of a contract has relieved a contracting party of the obligation imposed (see, e.g., *Egan v Kollsman Instrument Co.,* 21 NY2d 160; *Matter of Allstate Ins. Co. [La Perta],* 42 AD2d 104; 1 Williston, Contracts [3d

---

* The financing statement, according to the Bankruptcy Judge who declared the lien void, should have been filed in the office of the Secretary of State of Florida.

ed], § 90C, pp 309-310). However, from our own inspection of the notes, we do not consider them to be illegible and, in the absence of a statute compelling printing of a certain type (cf. Banking Law, § 567; Personal Property Law, §§ 46-c, 302, 402), we are not inclined to declare that the provisions of the notes are so obscure as to be unenforceable. The notes were executed in a transaction between bank and borrowers concerning the financing of a retail business, replacing a similar loan by another bank. Unlike the consumers in *Egan* and *Allstate Ins. Co. (supra),* the defendants, who are not claimed to be unsophisticated in commercial dealings, could be expected to understand the provisions in the notes—which in any case do not appear to be out of the ordinary in such transactions.

In the view that we take of the case, the defendants' third contention concerning the infirmities of the judgment need not now detain us. Since the case must be remanded, the claims of the defendants that interest was improperly caluclated may be again raised, if necessary, at Trial Term, and the return of the defendants' stock pledged as collateral, upon due payment of the defendants' obligations under the notes, may be directed by Trial Term.

We treat at length the defendants' argument that they are discharged by the plaintiff's failure to perfect its security interest in the corporate inventory and equipment.

### III

Section 3-606 of the Uniform Commercial Code provides:

"Impairment of Recourse or of Collateral.

"(1) The holder discharges any party to the instrument to the extent that *without such party's consent* the holder

"(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

"(b) *unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."* (Emphasis supplied.)

As accommodation makers, the defendants enjoyed the right of recourse against the other parties to the instrument and the collateral pledged as security (see Uniform Commercial Code, § 3-415, subd [5]; *Pearis v Goldschmidt,* 37 AD2d 1001, 1002). The plaintiff urges that the defendants consented to the plaintiff's failure to perfect its interest in the inventory pledged by certain provisions in the notes (cf. *Indianapolis Morris Plan Corp. v Karlen,* 28 NY2d 30, 33, 35). Those provisions are:

"All parties liable for the payment or collection hereof (1) agree to pay reasonable attorney's fees and expenses in the enforcement hereof * * * (2) waive presentment for payment, demand, notice of non-payment, notice of protest and protest of this note, (3) consent * * * to the release of any obligor or collateral * * * (4) agree that additional makers, endorsers, guarantors or sureties may become parties hereto without notice to them or affecting their liability hereunder. * * *

"The Bank is authorized * * * to fill in any blank spaces herein to conform to the terms upon which the loan evidenced hereby is made. * * *

"The liability of each obligor shall be absolute and unconditional and without regard to the liability of any other party hereto."

The defendants, on the other hand, argue that the obligations of good faith, diligence and care falling on the plaintiff under the Uniform Commercial Code cannot be waived, though performance of such obligations may be measured by the agreement of the parties, and that the notes here did not provide for a substitute measurement of performance (see Uniform Commercial Code, § 1-102, subd [3]). We must construe the provisions of the notes in the light of the statute and the applicable common-law principles (Uniform Commercial Code, § 1-103).

Under the common law one in the position of a surety, such as an accommodation party, was subrogated to the rights of the creditor, including resort to any collateral standing as security, upon payment of the debt *(Williamson v Casa-Eguia,* 253 NY 41, 47). In the event that the surety's right of subrogation was impaired to his detriment by the release of collateral by the creditor without the consent of the surety, the surety was *pro tanto* discharged *(Rutherford Nat. Bank v Manniello,* 240 App Div 506, affd 266 NY 568). The consent of the surety could be granted either at the time of the release

or by prior agreement *(Indianapolis Morris Plan Corp. v Karlen,* 28 NY2d 30, 33, 35, *supra).* Both at common law and under the Uniform Commercial Code the creditor bears a special duty toward the surety to take reasonable care to protect and preserve collateral (Uniform Commercial Code, § 9-207; *Grace v Sterling, Grace & Co.,* 30 AD2d 61, 64).

At common law different views were held concerning the discharge of the surety as the result of the failure of the creditor to record a lien, thus losing the value of the collateral. The weight of authority held that the surety was discharged *pro tanto,* as an agreement was implied from the legal relationship that the creditor was under a duty to make the security valid (74 Am Jur 2d, Suretyship, § 93, p 68). Even though the creditor was guilty of inaction, which usually did not result in a loss of his rights (10 Williston, Contracts [3d ed], § 1233, pp 747-751), the failure to file a lien was said to constitute active rather than passive negligence (Stearns, Suretyship [5th ed], § 6.49, p 188; cf. Restatement, Security, § 132, p 358).

The cases in New York prior to the Uniform Commercial Code do not yield easily to analysis. In the course of its opinion in *Shutts v Fingar* (100 NY 539, 544), the Court of Appeals in a strong dictum stated that a failure by the creditor to record a mortgage given as collateral would discharge a surety (see, also, *Auto Brokerage Co. v Morris & Smith Auto Co.,* 106 Misc 147). Some 31 years later, however, our court held to the contrary in assessing the effect of the failure to file an assignment given as security, whereby the validity of the assignment was vitiated *(Westchester Mtge. Co. v Thomas B. McIntire, Inc.,* 174 App Div 525). The authority of *Westchester Mtge. Co.* is seriously weakened, nevertheless, because *Shutts v Fingar (supra)* is not mentioned in the opinion of our court, leading to the reasonable inference that the earlier dictum was neither cited to our court nor considered by us in our decision. Consequently, we do not believe that we are bound by the decision in *Westchester Mtge. Co. (supra),* but instead must pay heed to the pronouncement of the Court of Appeals in *Shutts v Fingar* (100 NY 539, *supra).*

In any event, we are now governed by the provisions of the Uniform Commercial Code and we recognize that we must determine this appeal under its provisions and the terms of the notes in litigation. Nonetheless, we take note of the common law in construing those provisions of the statute

which have particular application here (Uniform Commercial Code, § 3-606), since they appear in large part to embody common-law principles.

Outside New York, the courts in the main interpret section 3-606, the creditor's failure to file a lien, as an impairment of the surety's right of subrogation and, therefore, a *pro tanto* discharge of the surety *(Jaquays & Co. v First Security Bank,* 101 Ariz 301; *Custom Leasing v Carlson Staples & Shippers Supply,* 195 Neb 292; *Langeveld v L.R.Z.H. Corp.,* 74 NJ 45; *First Nat. Bank in Grand Forks v Haugen Ford,* 219 NW2d 847 [ND]; *Peoples Bank of Point Pleasant v Pied Pipers Retreat,* 209 SE2d 573 [W Va]; *Ammerman v Miller,* 488 F2d 1285, 1295; *Behlen Mfg. Co. v First Nat. Bank of Englewood,* 28 Col App 300; *National Bank of Detroit v Alford,* 65 Mich App 634). Other courts have come to the opposite conclusion, finding that either the language in the instrument of suretyship permitting a release of collateral or a waiver, or individual circumstances showing reliance by the creditor on the surety rather than the collateral, repulsed the surety's discharge (see, e.g., *First Citizens Bank & Trust Co. v Larson,* 22 NC App 371, cert den 286 NC 214; *Greene v Bank of Upson,* 231 Ga 287; *American Bank of Commerce v Covolo,* 88 NM 405; *Ishak v Elgin Nat. Bank,* 48 Ill App 3d 614).

In New York, decisions at nisi prius and in the Appellate Term have held that the failure to file was excused either by the language permitting the creditor to release the collateral, or because the surety should himself have filed when the creditor did not *(Lafayette Bank & Trust Co. of Suffern v Silver,* 58 Misc 2d 891; *Mikanis Trading Corp. v Lowenthal,* 94 Misc 2d 962).

We think that the proper construction of section 3-606 of the Uniform Commercial Code is that the creditor's failure to file a lien resulting in a loss of collateral *pro tanto* discharges the surety, unless excused by clear and unequivocal language in the agreement between the parties (see *Langeveld v L.R.Z.H. Corp.,* 74 NJ 45, *supra; Jaquays & Co. v First Security Bank,* 101 Ariz 301, *supra; First Nat. Bank in Grand Forks v Haugen Ford,* 219 NW2d 847 [ND], *supra).*

It remains to determine whether under the statute the failure of the plaintiff to file was relieved by the consent of the defendants.

## IV

The plaintiff depends on two provisions of the notes to

justify its claim that the defendants consented to the failure to file the financing statement as required by Florida law. The plaintiff, in effect, infers from the language of the notes that the defendants assumed the risk that the plaintiff might not file a financing statement.

The first provision to which the plaintiff points is that the parties to the note "consent to and waive notice of * * * the release of any obligor or collateral or any part thereof". This contention equates a release of collateral with failure to file a lien, resulting in the destruction of the value of the collateral. We do not think the two are similar. As we have seen, at common law the release of collateral by the creditor was not regarded as possessing the same legal characteristics as the failure to file a lien by the creditor. A release of collateral was considered to interfere with the surety's rights by removing assets to which otherwise he would have had access by subrogation; the failure to file was considered instead to be a breach of the implied agreement of the creditor to preserve the value of the collateral. Moreover, a release of collateral presupposes a deliberate act by the creditor at a future time to surrender an asset, whereas the failure to file is a neglect to act—not an intentional choice—at nearly the threshold of the transaction. Hence, the consent to release of collateral does not reach the creditor's failure to file.

The second provision relied on by the plaintiff is that the defendants agreed that "no omission to do any act not requested by obligors shall be deemed a failure to exercise reasonable care" and "[t]he Bank * * * shall not by any act of omission or commission be deemed to waive any of its rights or remedies * * * unless such waiver be in writing and signed by the Bank". Neither of these agreements, in our view, touches a failure to file in order to secure collateral. To begin with, the statute forbids a disclaimer of the plaintiff's obligation of diligence and care, although a different standard of performance of the obligation may be provided by agreement (Uniform Commercial Code, § 1-102, subd [3]). No different standard is here provided, for a total waiver of the obligation is tantamount to no performance. Second, these provisions are directed toward a waiver of the plaintiff's rights, not the performance of an obligation of the plaintiff owing to the defendants.

We agree with the authorities in the other jurisdictions

which require a clear statement, unmistakable in its application, relieving the creditor from the loss otherwise resulting to the surety by action or lack of action of the creditor. Thus, in *National Acceptance Co. of Amer. v Demes* (446 F Supp 388), the court found the surety had excused the creditor from perfecting a security interest from language in the agreement which stated expressly that the creditor was not under a duty to protect, secure or insure any security or lien. No similar language appears in the notes in suit.

Apart from the language of the notes, the plaintiff also urges that the defendants cannot rest on plaintiff's neglect, since they could have filed the financing statement themselves. There are several answers to this assertion. First, it ignores the obligation which the law implies from the relationship of principal and surety requiring the creditor to preserve the value and validity of the lien of collateral. In the context of this case, the argument disregards the fact that the defendants signed the notes some time after the collateral was given, and that the defendants, who were nonresidents of Florida, could well have assumed that the plaintiff would have protected the security by filing the financial statement in accordance with Florida law. In addition, the evidence is that the plaintiff did take steps to perfect the lien, but did not file in the proper office. As between the plaintiff and the defendants, we think that the loss for the failure should fall on the party whose conduct was primarily responsible for the incidence of the loss.

## V

The judgment should, therefore, be reversed and the defendants should be discharged to the extent that they suffered loss through the failure of the plaintiff to perfect the lien of the collateral. A remand for a hearing is required in order that the loss may be determined. On the remand the defendants may request such decretal provisions in the judgment as will insure the return of the stock pledged by them upon payment of the sum owing by them, as well as any contentions which the defendants may be advised to make with respect to the manner of the computation of interest due on the amount found to be owing.

MARTUSCELLO and RABIN, JJ., concur; LATHAM and COHALAN, JJ., dissent and vote to affirm the judgment.

Judgment of the Supreme Court, Westchester County, entered February 24, 1978, reversed, on the law, with costs, and action remitted to Trial Term for further proceedings in accordance herewith.