OPINION OF THE COURT
Daniel F. Luciano, J.
This is an action to recover upon a guarantee.
The plaintiff is the lessor of two hydraulic lifts. The lessee, Main Transmission Corp. (Main), which is not named as a party in this action, has defaulted in making payments under the lease. In addition Main, in some fashion, transferred the hydraulic lifts to a nonparty, its former landlord, and the lifts have not been retrieved.
The "company guarantee” dated "3/31/81” executed by the defendant upon which this action is based provides:
"Gibraltar Transmission Corporation guarantees to see that Main Transmission Corporation fulfills all of their obligations to Guardsman Lease Plan Inc. as stated in the Lease Agreement between said parties.
"Upon default of Main Transmission Corporation, Gibraltar Transmission Corporation will be liable for the unfulfilled debts or obligations of Main Transmission Corporation as pertains to said Lease Agreement.”
The plaintiff lessor never filed a financing statement reflecting its security interest in the two hydraulic lifts.
The first issue to be resolved is whether the guarantee executed by the defendant is a guarantee of payment or a guarantee of collection. The distinction is significant since Main has not been named as a party in this action and since this action is the only legal proceeding undertaken by the plaintiff to recover due to Main’s default upon the lease. The applicable rules are summarized as follows: "A guaranty of payment is an unconditional undertaking that the debtor will pay, and on such a guaranty the creditor may, upon default, proceed directly against the guarantor without taking any steps to collect the amount due from the principal debtor. Where a guaranty is one of payment, the omission or neglect of the creditor to proceed against the debtor is not, absent special circumstances, a defense available to the guarantor in an action by the creditor. Such a defense is ordinarily available only to a guarantor of collection.” (57 NY Jur, Suretyship and Guaranty, § 21.) "If the guaranty is one of collection, the guarantor’s undertaking is that if the debt cannot be collected by legal proceedings instituted by the creditor, the guarantor *889 will pay, so that the institution of an action against the principal debtor by the creditor, and a failure to collect by such means, are conditions precedent to the liability of the guarantor”. (57 NY Jur, Suretyship and Guaranty, § 22.) "Where a surety contract is a guaranty of payment, or an undertaking conditioned upon the performance by the principal of some obligation to the obligee, the creditor ordinarily has an option in suing on the guaranteed obligation to join the principal and the surety as defendants, or to proceed against the principal alone, or the surety alone, in the first instance.” (57 NY Jur, Suretyship and Guaranty, § 265.) "If the action is to obtain a money judgment against the surety alone, the creditor cannot be compelled to bring in the principal as a defendant, unless the suretyship contract expressly provides as a condition precedent to liability on the part of the surety that the principal must be made a party to any action on the undertaking. Of course, if the guaranty is one of collection, there can be no joinder of the principal and the surety, since the prosecution of an action against the principal for the debt is a condition precedent to any recovery against the surety”. (57 NY Jur, Suretyship and Guaranty, § 266.)
To determine the nature of the guarantee the plain and unambiguous meaning of the language employed should be given effect. (Travelers Indent. Co. v Buffalo Motor & Generator Corp., 58 AD2d 978; 57 NY Jur, Suretyship and Guaranty, §70.)
In this case the plain and unambiguous meaning of the words of the guarantee reflect that it is a guarantee of payment and not a guarantee of collection since it provides for payment by the guarantor immediately upon default and there is no mention whatsoever of a requirement that the creditor first attempt to recover from the debtor. Therefore it is no defense to this action that neither Main nor the former landlord have been named as parties or that no previous action has been commenced against Main.
The next issue to be considered is whether, despite the fact that the guarantee is one of payment, the defendant has a defense to the plaintiff’s cause of action due to the plaintiff’s failure to file a financing statement in accordance with Uniform Commercial Code article 9. The parties have focused upon this issue which raises two questions: (1) did the plaintiff have a security interest in the hydraulic lifts which would have entitled it to file a financing statement, and (2) if the plaintiff was entitled to file a financing statement does such a *890 failure to file constitute an impairment of the collateral to the detriment of the defendant surety, thereby serving as a discharge to the extent of the impairment.
The court, however, perceives a third, more fundamental question: assuming that the plaintiff did have a security interest which it failed to perfect, and assuming the failure to file a financing statement may impair the security to the detriment of a surety, did that failure damage the defendant in the current circumstances.
Each of these questions is considered below. In answer to the first of the questions the court concludes that the plaintiff did have a security interest. Uniform Commercial Code § 1-201 (37) defines "security interest”. That section reflects that depending upon its terms a lease may or may not be a security interest. The section provides, in part: "Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration * * * does make the lease one intended for security.” (Uniform Commercial Code § 1-201 [37].)
The lease agreement between the plaintiff and Main, in its basic form, contained a "no purchase option” clause. However, a "purchase option” agreement was executed along with the lease. The "purchase option” agreement provides, in part: "The net purchase price (plus applicable tax) shall be: 10% or $751.00, or the then FAIR MARKET VALUE of the equipment, whichever is greater.”
Further, the agreement states: "This is a separate and distinct agreement between the parties and is not a condition of nor does it form a part of the Lease Agreement referred to above.”
Notwithstanding this last-quoted clause from the purchase option it is virtually impossible to separate the purchase option from the lease. Generally, "agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one”. (Flemington Natl. Bank & Trust Co. v Domler Leasing Corp., 65 AD2d 29, 32, affd 48 NY2d 678, citing Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197.)
*891 Even if effect is given to the clause stating that the purchase option is a contract distinct from the lease, however, that does not prevent the recognition that the purchase option and the lease were contemporaneous agreements relating to the same subject matter. The substance of the parties’ agreement or agreements can be found by reading the documents together. Certainly in view of the fact that the purchase option overrides a clear term in the lease the parties had to have intended that they be read together. Thus, even if the lease, in and of itself, may be construed as containing no option to purchase, the full agreement between the plaintiff and Main of April 5, 1981 did include a purchase option. Substance rather than form must prevail.
Notwithstanding this determination the court cannot conclude that the option to purchase for "10% or $751.00, or the then FAIR MARKET VALUE of the equipment, whichever is greater” is a nominal consideration such as would automatically evidence a security interest as defined by Uniform Commercial Code § 1-201 (37).
As recited in the Texas case of Davis Bros. v Misco Leasing (508 SW2d 908, 76 ALR3d 1 [Tex]), there are two tests to determine whether the purchase option is nominal or substantial. The first is to compare the option price with the market value. In this case if the market value had exceeded "10% or $751.00” the lessee (Main) would have had to pay the higher market value. Thus, there is no comparison to be made. The second test is to determine whether or not the terms of the purchase option are such as to leave the lessee (Main) with no sensible alternative but to exercise the option. Again, since in this case the agreement does not permit the lessee (Main) to purchase for less than the market value there may be a sensible alternative other than exercising the purchase option. The possibility that it may have been highly unlikely that the purchase price would exceed $751 due to the market value of the lifts after five years of use was not established at trial.
The failure to automatically qualify as a security interest under the "nominal consideration” test, however, does not end the inquiry. The next step in the process is to examine the intent of the parties. (Van Alphen v Robinson, 71 AD2d 1039; Davis Bros. v Misco Leasing, supra.) This may be done by examining the other terms and conditions of the lease.
In International Paper Credit Corp. v Columbia Wax Prods.
*892 Co. (102 Misc 2d 738, revd 79 AD2d 700)[1] the court reviewed many of the appropriate criteria. These include:
1. "The fact that the lessee is required to maintain insurance coverage upon leased equipment indicates that the transaction is a secured transaction and not a true lease. (Matter of Tillery, 571 F2d 1361.)” (102 Misc 2d, at p 743.) Pursuant to term No. 4 of the current lease the lessee (Main) was required to maintain all insurance coverage.
2. "Where the lessor was not in the business of leasing the equipment in question and merely purchased the equipment desired by the lessee, the nature of the transaction indicates that the lease was actually a secured transaction. (Citizens & Southern Equip. Leasing v Atlanta Fed. Sav. & Loan Assn., 114 Ga App 800.)” (International Credit Paper Corp. v Columbia Wax Prods. Co., 102 Misc 2d, at p 743.) In term No. 4 of the instant lease it is stated: "Lessor, not being the manufacturer of the equipment, nor manufacturer’s agent, makes no warranty or representation”. Moreover, the evidence at trial revealed that the plaintiff lessor purchased the lifts from a separate company, Dirigo, and then leased the lifts to Main.
3. "The fact that the rentals required to be paid by the lessee exceed the purchase price is an indication that the transaction is a sale and that the lease creates a security interest. (National Equip. Rental v Priority Electronics Corp., 435 F Supp 236.)” (International Credit Paper Corp. v Columbia Wax Prods. Co., 102 Misc 2d, at p 743.) In this case the plaintiff lessor purchased the lifts for $7,509.94. The required payments under the lease, 60 payments of $205.77, represent a total required "rental” payment of $12,346.20.
4. "A provision for the sale of the leased property upon default and the liability of the lessee for any deficiency in the total rent in excess of the sale proceeds indicates that the transaction is a secured transaction. (American Lease Plans v Cardin, 558 SW2d 325 [Mo].)” (International Credit Paper Corp. v Columbia Wax Prods. Co., 102 Misc 2d, at pp 743-744.) Term No. 9 of the lease presently under review provides, in part, that upon a default by the lessee (Main), the lessor (the plaintiff) may repossess the leased equipment and that, "The Lessor shall, nevertheless, be entitled to recover immediately *893 as liquidated damages for loss of the bargain and not as a penalty any unpaid rent that accrued on or before the occurrence of the event of default plus an amount equal to the difference between the present value, as of the date of the occurrence of such event of default, of the aggregate rent reserved hereunder for the unexpired term of this lease and the then present value of the aggregate rental value of all equipment for such unexpired term which the Lessor reasonably estimes [sic] to be obtainable for the use of all equipment during such unexpired term.”
Another factor to be considered is the lessor’s requirement of a guarantee or indemnity agreement executed by a third party. (Davis Bros. v Misco Leasing, supra, citing In re Transcontinental Indus., 3 UCC Rep Serv 235 [ND, Ga 1965].)
The present action is evidence that the lessor (the plaintiff) required a third party’s guarantee.
For these reasons it is fair to conclude that the leasing agreement entered into between the plaintiff and Main was a security interest and thus, the plaintiff could have filed a financing statement.
The next question is whether the failure to file a financing statement serves to relieve the defendant from any obligation on its guarantee.
In Executive Bank v Tighe (66 AD2d 70, mod on other grounds 54 NY2d 330),[2] although specifically addressing the meaning of Uniform Commercial Code § 3-606, the Appellate Division, Second Department, said the following:
"Under the common law one in the position of a surety, such as an accommodation party, was subrogated to the rights of the creditor, including resort to any collateral standing as security, upon payment of the debt (Williamson v Casa-Eguia, 253 NY 41, 47). In the event that the surety’s right of subrogation was impaired to his detriment by the release of collateral by the creditor without the consent of the surety, the surety was pro tanto discharged (Rutherford Nat. Bank v Manniello, 240 App Div 506, affd 266 NY 568). The consent of the surety could be granted either at the time of the release or by prior agreement (Indianapolis Morris Plan Corp. v Karlen, 28 NY2d 30, 33, 35, supra). Both at common law and *894 under the Uniform Commercial Code the creditor bears a special duty toward the surety to take reasonable care to protect and preserve collateral (Uniform Commercial Code, § 9-207; Grace v Sterling, Grace & Co., 30 AD2d 61, 64).
"At common law different views were held concerning the discharge of the surety as the result of the failure of the creditor to record a lien, thus losing the value of the collateral. The weight of authority held that the surety was discharged pro tanto, as an agreement was implied from the legal relationship that the creditor was under a duty to make the security valid (74 Am Jur 2d, Suretyship, § 93, p 68). Even though the creditor was guilty of inaction, which usually did not result in a loss of his rights (10 Williston, Contracts [3d ed], § 1233, pp 747-751), the failure to file a lien was said to constitute active rather than passive negligence (Stearns, Suretyship [5th ed], § 6.49, p 188; cf. Restatement, Security, § 132, p 358) * * *
"In any event, we are now governed by the provisions of the Uniform Commercial Code and we recognize that we must determine this appeal under its provisions and the terms of the notes in litigation. Nonetheless, we take note of the common law in construing those provisions of the statute which have particular application here (Uniform Commercial Code, § 3-606), since they appear in large part to embody common-law principles.” (66 AD2d, at pp 74-76.)
Thus, it is significant that the Appellate Division, Second Department, concluded that the result reached under Uniform Commercial Code § 3-606 is the result which would have been reached under the common law.
Section 3-606 does not apply to a situation such as that in the current case since that section of the Uniform Commercial Code concerns commercial paper and not equipment leases. Nevertheless, the interpretation of the Appellate Division in the case interpreting that section applies in other situations as well since that provision of the Uniform Commercial Code embodies common-law principles relative to secured creditors and guarantors.
Notwithstanding these conclusions, however, the court, in considering the third question raised (whether there has been a discharge under the particular facts of this case), finds that the plaintiffs failure to file a financing statement has not impaired the collateral to the detriment of the defendant and thus, that the defendant’s obligation on its guarantee has not been discharged to any extent.
*895 The parties do not dispute that Main’s landlord took possession of the hydraulic lifts, although the precise circumstances of such taking are not established. The plaintiff is the legal owner of the hydraulic lifts. By whatever means Main’s landlord obtained the lifts from Main, it remains that the landlord took possession of property which did not belong to Main. To the extent that the landlord may refuse a demand by the plaintiff to return the lifts the landlord is guilty of a conversion of that property. (See, 23 NY Jur 2d, Conversion and Action for Recovery of Chattel, § 36.)
As observed in Executive Bank (66 AD2d, at p 74), a surety is subrogated to the rights of the creditor. Thus, while the plaintiff’s failure to file a financing statement may have been a potential cause of injury to the defendant surety, that failure has not injured the defendant in the context of the facts established in this case. The plaintiff’s failure to file a financing statement therefore is no defense to this action.
The final matter to be resolved is the amount of damages recoverable by the plaintiff.
The plaintiff seeks to recover damages for 24 months of unpaid rental charges together with $55 in late charges, or $4,993.48 plus $7,509.94, which is the purchase price of the hydraulic lifts, since the lifts have passed from Main’s possession.
Pursuant to term No. 9 of the lease between the plaintiff and Main a default is defined as, inter alia:
"(a) Lessee fails to pay when due any installment of rent and such failure continues for a period of 10 days * * *
"(e) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the equipment or any item thereof.”
Main was in default pursuant to both of these provisions. Accordingly, the plaintiff is entitled to a total of $4,993.48 for unpaid rent and late charges.
The plaintiff is also entitled to compensation for the loss of the hydraulic lifts. "When personal property is lost, destroyed, or otherwise rendered valueless, by reason of the defendant’s negligence or other wrongful act, the measure of damages recoverable is ordinarily the market value of that property”. (36 NY Jur 2d, Damages, § 81; see also, 23 NY Jur 2d, Conversion and Action for Recovery of Chattel, §§ 192-193.)
Here the plaintiff seeks recovery of its purchase price, *896 which it has established, not the market value, which it has not established directly. Under these circumstances it is helpful to consider certain guidelines for determining damages.
"In any action to recover damages, the plaintiff must allege facts stating a cause of action and showing that damage arose from the wrong complained of. Recovery can be had only on claims set forth in the allegations, and it is reversible error to admit proof on claims which are beyond the scope of the pleadings.
"The plaintiff has the burden of proving the extent of his injury and the amount of his damages by competent evidence. The defendant, on the other hand, has the burden of negating the plaintiff’s claim or proving that damages in a lesser amount will sufficiently compensate the plaintiff for his loss. Since the burden to establish damages is upon the plaintiff, it is incumbent upon him, to this end, to adopt and present to the court a proper method and basis for the ascertainment of the amount which he seeks to recover. The burden is upon him to establish facts from which his damages may be measured according to some rule. A claim for damage cannot be sustained by his conclusion or general estimate alone. While a plaintiff is not required to prove his damages to the dollar, he is required to disclose the amount sought in general terms or to furnish some basis of computation.
"It is peculiarly within the discretion of the trier of fact to assess the evidence and the persuasiveness of testimony as to estimates and evaluations of damage.” (36 NY Jur 2d, Damages, § 186.)
Although no proof directed at establishing the market value of the hydraulic lifts was offered there is sufficient evidence to permit the court, as the trier of fact, to make a determination as to that issue.
On cross-examination the plaintiff’s witness Robert M. Attamasio testified to the following:
"Q. So that after a period of two years from June 1, 1981 to May, 1983, is it fair to say that the equipment would have depreciated approximately thirty-six percent in value?
"A. Yes * * *
"the court: I have a question. Mr. Attamasio, from an accounting point of view, would it be a fair conclusion to say that the purchase option based upon the payment of rent over the period of the lease actually amortizes the capital investment for the equipment?
*897 "the witness: Yes.”
In view of the paucity of evidence submitted by either party the court, as the trier of fact, deems it fair to award the plaintiff, in addition to 24 months’ rental payments plus late charges, the established cost of the hydraulic lifts ($7,509.94), less 36% or $4,806.36.
The plaintiff, accordingly, is entitled to judgment in the amount of $9,799.84 ($4,993.48 plus $4,806.36) together with costs and disbursements, and interest from October 21, 1981, which is the date upon which the plaintiff made its demand upon the guarantee.

. The reversal by the Appellate Division involved the question of the commercial reasonableness of the sale of a leased machine. Implicitly the Appellate Division accepted the lower court’s findings as to whether the lease was a security interest.

. Here the reversal by the Court of Appeals was based upon a finding of a waiver of filing requirement. The Appellate Division’s conclusions with respect to the failure to file absent a waiver by the guarantor were not upset by the Court of Appeals.