**LEASING SERVICE CORPORATION, Plaintiff,**

v.

**Ralph E. BROETJE, Don L. Chappell, Richard J. Carman, Betty J. Carman, Deanna V. Chappell, John W. Carman and Jeannie Carman, Defendants.**

**No. C–82–648 RJM.**

United States District Court, E.D. Washington.

Feb. 13, 1986.

$2 million in loan participations.

Sol D. Bromberg, New York City, Roger F. Chase, of MacGillivray & Jones, Spokane, Wash., for plaintiff.

Mark B. Callen, Spokane, Wash., John R. Lewis, Yakima, Wash., for defendants.

## MEMORANDUM DECISION

ROBERT J. McNICHOLS, Chief Judge.

By this action the plaintiff seeks to enforce the terms and conditions of a heavy equipment lease against the original lessee, his transferee and the guarantors. Plaintiff is actually the assignee of the original lessor, Lynnwood Equipment, Inc.

The following facts were admitted by all parties or clearly established by the evidence:

1. By Equipment Lease Agreement (the "Lease") dated January 27, 1978, Lynnwood Equipment, Inc., leased to Don L. Chappell one Driltech Well Drilling Machine and ancillary equipment for a total rent of $340,380.00, payable $17,019.00 upon execution of the Lease and the balance of $5,673.00 per month, for fifty-seven (57) consecutive months, starting March 5, 1978.

2. On January 27, 1978, defendants Richard J. Carman, Betty J. Carman, Deanna V. Chappell signed personal guarantees, guaranteeing Don L. Chappell's obligation to Leasing Service Corporation.

3. Lynnwood Equipment, Inc., assigned its lessor's interest under the Lease to Leasing Service Corporation, the plaintiff herein, on January 27, 1978.

4. By Transfer and Assumption Agreement dated June 21, 1978, Don L. Chappell assigned his lessee's interest under the Lease to Ralph E. Broetje. The assignment was approved by the guarantors, Richard J. Carman, Betty J. Carman and Deanna V. Chappell. At the time the Transfer and Assumption Agreement was signed by Don L. Chappell and Ralph E. Broetje, the unpaid balance of rent under the Lease was $300,669.00. Pursuant to the Transfer and Assumption Agreement, Ralph E. Broetje agreed to pay fifty-two

(52) consecutive monthly installments of $5,673.00, plus tax, starting July 5, 1978.

5. Defendants defaulted on the rental payment due March 5, 1981, and since that time have failed to make any rental payments, despite demand.

6. The unpaid balance of the rent as of March 5, 1981 was $119,133.00.

7. The full unpaid balance of the rent was accelerted and full payment demanded by letter dated June 26, 1981, which letter was sent by certified mail to all defendants.

8. Thereafter, Leasing Service Corporation elected to sell the equipment at public sale as permitted in the Lease. By letter dated July 24, 1981, all defendants were notified that the equipment would be sold at public auction at 11:30 a.m. on August 19, 1981 at the premises of Lynnwood Equipment, Inc., 19009 Highway 99, Lynnwood, Washington 98036. Notice of the public sale was also advertised in the following newspapers: *Tri-City Herald*, Pasco, Washington, August 10, 11, 12, 13, 1981; *Contractors Hot Line*, Box 1052, Fort Dodge, Iowa, July 28 and 30, and August 4 and 6, 1981.

9. A public sale of the equipment was held August 19, 1981 at Lynnwood Equipment, Inc., 19009 Highway 99, Lynnwood, Washington 98036, at which Leasing Service was the successful bidder for $50,000.00. No other bids were received.

10. Leasing Service Corporation then brought this action against the defendants for the deficiency remaining after application of the sale proceeds.

The defendants raise several contentions:

1. All defendants argue that the Equipment Lease, the Transfer and Assumption Agreement between defendant Chappell and defendant Broetje and the personal guarantee executed by defendants Richard Carman, Betty Carman and Deanna Chappell are all unenforceable on the basis that they are unconscionable.

2. All defendants challenge the commercial reasonableness of the sale of the equipment.

3. Defendant Broetje contends that he did not actually see the equipment lease when he executed the Transfer and Assumption Agreement and therefore, there was no meeting of the minds.

4. The defendants Carman argue that they are sureties rather than guarantors and therefore, the plaintiff is required to exhaust all remedies against the other defendants prior to proceeding against them.

5. Defendant Broetje makes a further argument that he was entitled to receive the investment tax credit under the Lease.

 This court, and other courts, have had occasion to pass upon the question of unconscionability of leases virtually identical to the one in this case. There is no question but that the equipment lease in question was carefully drafted to favor and protect the rights of the lessor and to place clear contractual obligations on the lessee. Nevertheless, the parties executed these contractual obligations voluntarily in their own interests. For all practical purposes the transaction leading to the original lease and the assignment thereof by the lessor to Leasing Services was nothing more than a financing arrangement. The lease was executed during a period of time when interest rates were extremely high. When contractual terms provide for damages grossly disproportionate to the probable loss, the court may decline to enforce the contract on the basis that penalties are exacted. However, where the damages provided for bear a reasonable relation to the probable loss, the court cannot void those provisions in the contract on the basis of unconscionability. The circumstances of this case indicate that the interest rate provided for in the lease was not disproportionate and that the fifteen percent provided as the residual value of the equipment at the conclusion of the lease period is a valid estimate of that value. I conclude that the lease agreement, the transfer and assumption agreement and the personal guarantees are not tainted by unconscionability and are fully enforceable. *See Leasing Services Corporation v. Justice*, 673 F.2d 70 (2nd Cir. 1982).

■ I now turn to the commercial reasonableness of the sale. The sale of the equipment after default was governed by R.C.W. 62A.9–504(3). This statute imposes two fundamental requirements upon the reselling creditor. First, the debtor must be furnished reasonable notice of the impending sale. Second, the sale, including the method, manner, time, place and terms must be conducted in a commercially reasonably manner.

■ In this case, it is undisputed that all of the defendants were notified of the time and place of the sale. This notice was given approximately a month before the date of the sale. In addition, notice to the public was given by advertisements as stated above. The defendants had every opportunity to submit bids or to solicit others to submit bids on the equipment. This was not done. The fact that the plaintiff was the only bidder in no way affects the reasonableness of the sale. I conclude therefore, that the sale was conducted in a commercially reasonable manner.

■ Broetje's contention that there was no meeting of the minds when he executed the Transfer and Assumption Agreement is not meritorious. The equipment lease was clearly described in the Transfer and Assumption Agreement. There was no concealment by anyone of any material fact. If Mr. Broetje elected to execute the assumption agreement without insisting upon a review of the underlying lease, that is his problem.

The guarantee agreement executed by defendants Carman is clear and unambiguous. They are therefore liable as guarantors.

■ Mr. Broetje's argument that he is entitled to the investment tax credit on the equipment is not supported by the evidence. Mr. Broetje assumed the benefits and the obligations of his assignor. His assignor, Mr. Chappell, earlier elected not to take that credit. At the time of the assignment to Mr. Broetje, that credit was not available.

* Cannot be less than zero.

Defendants make several additional arguments which are nothing more than efforts to prove oral modifications of written contracts. If we were to assume the truth of the testimony on this issue it makes no difference. Representatives of the plaintiff were not parties to any alleged oral modification.

I will now address the damages. Except for the argument of unconscionability, there is little dispute. Since that issue has been resolved, the amounts owing to the plaintiff can be calculated from the lease itself and the other evidence. They are as follows:

| | |
|---|---|
| Unpaid balance—date of default | $119,133.00 |
| Interest @ 24% from date of default to date of sale | 13,264.81 |
| Sales/use tax due as of date of sale | 2,723.10 |
| Balance due at date of auction | $135,120.91 |
| Auction proceeds | $ 50,000.00 |
| Costs incurred for lien, search, advertising etc. re: sale | 531.81 |
| Balance—sale proceeds | $ 49,468.19 |
| Less 15% of initial cost of equipment (15% × 340,380) | 51,057.00 |
| Net auction proceeds * | – 0 – |
| Deficiency | $135,120.91 |

The Clerk shall enter judgment for the plaintiff as follows:

(1) The sale of the equipment was valid and title vested in the plaintiff.

(2) Plaintiff shall have judgment against the defendants, jointly and severally, in the sum of $135,120.91 with interest at 24% per annum from August 19, 1981 until paid.

If plaintiff's claim for attorneys fees cannot be resolved by agreement, the court shall be advised and a hearing will be held if necessary.