825 F.2d 1497
 4 UCC Rep.Serv.2d 842
 CITI-LEASE COMPANY, Plaintiff-Appellant,
v.
ENTERTAINMENT FAMILY STYLE, INC., Defendant,
Samuel J. & Theresa Gelato h/w, Rocco J. & Mary Anne Corozza
h/w, and Joseph L. & Elaine Corozza, jointly,
severally and/or in the alternative,
Defendants- Appellees.
 No. 86-5176.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 27, 1987.
 
 Howard N. Sobel, Cherry Hill, N.J., for plaintiff-appellant.
 Joseph Corozza, pro se.
 Elaine Corozza, pro se.
 Samuel Gelato, pro se.
 Teresa Gelato, pro se.
 Rocco Corozza, pro se.
 Maryanne Corozza, pro se.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD*, Senior District Judge.
 VANCE, Circuit Judge:
 
 
 1
 Plaintiff Citi-Lease Company brought this action to obtain a deficiency judgment from the individually named defendants as guarantors of a contract breached by defendant Entertainment Family Style, Inc. The issue on appeal is whether the district court incorrectly entered judgment for the defendants on the ground that Citi-Lease had forfeited its right to a deficiency by failing to provide notice of its repossession and sale of the contract's subject matter. We affirm.
 
 I. FACTS
 
 2
 Entertainment Family Style, Inc. (hereinafter "Entertainment") was a Florida corporation involved in a video arcade business operated and maintained by the individually named defendants. In March 1983, Entertainment contracted with Citi-Lease Company, a New Jersey partnership (hereinafter "Citi-Lease"), for the "lease" of 25 video games. The individually named defendants each personally guaranteed this contract. Citi-Lease financed the purchase of the games from Bensar, Inc., an Ohio corporation.
 
 
 3
 After the first three months of the "lease," Entertainment defaulted on the scheduled payments. Citi-Lease accelerated the remaining payments and filed suit in the United States District Court for the District of New Jersey. Pursuant to Entertainment's request, the action was transferred to the Southern District of Florida.
 
 
 4
 In their answer, the guarantors[1] admitted defaulting on the payments. Nevertheless, they maintained that the contract was actually an installment purchase agreement and that Citi-Lease had forfeited its right to a deficiency judgment by failing to provide prior notice of its repossession and private sale of the games.[2] Citi-Lease contended at trial that the contract created a lease, whereas the U.C.C. notice provisions apply only to security interests.[3]
 
 
 5
 The district court entered judgment for the guarantors.[4] The court held that the contract created a security interest and concluded that Citi-Lease had forfeited its right to a deficiency judgment by failing to provide notice before repossession and sale. On appeal, Citi-Lease contends that this was error.[5]
 
 II. CONTROLLING LAW
 
 6
 As a threshold matter, we must determine whether to construe the contract under the laws of Florida, the business situs of Entertainment and home of the guarantors--or under the laws of New Jersey, Citi-Lease's principal place of business. The district court interpreted the contract under Florida law and the guarantors argue that they are entitled to the protection of Florida law as a matter of Florida public policy. They provide no authority for this proposition. Citi-Lease argues that the applicable law is that of New Jersey because the contract so provides.
 
 
 7
 The statutory codes of both Florida and New Jersey provide that parties to a transaction may stipulate to the governing law. In the present case, the contract specifically provides that its terms are to be construed and enforced according to New Jersey law. See Fla.Stat. Sec. 671.105; N.J.Rev.Stat. Sec. 12A:1-105. It is therefore New Jersey law that we apply in order to determine whether the contract gave rise to a lease or a security interest.
 
 III. CONSTRUCTION OF THE CONTRACT
 
 8
 The requirements for creation of a valid security interest in New Jersey are (1) a writing, (2) signed by the debtor, (3) describing the collateral, and (4) indicating that the debtor grants a security interest in the collateral to the creditor. Leasing Service Corp. v. American National Bank & Trust Co., 19 U.C.C.Rep. 252, 261 (D.N.J.1976). Citi-Lease's sole argument is that the contract does not satisfy the fourth requirement.
 
 
 9
 No direct evidence was introduced at trial as to whether the parties intended a lease or an installment purchase agreement. Under New Jersey law, however, it is the form of the transaction rather than the subjective intent of the parties that determines whether a contract conveys a security interest:
 
 
 10
 The most common application of Article 9 to the lease context is the disguised conditional sale. Professor Gilmore has pointed out that the word "intended" in the Sec. 1-201(37) definition "has nothing to do with the subjective intention of the parties, or either of them." Gilmore, Securities Interests in Personal Property, Sec. 11.2, at 338. Rather, the terms of the agreements themselves are the "facts of each case" upon which the court must determine the nature of the interests created.
 
 
 11
 Id. at 258.
 
 
 12
 In Leasing Service, the court recharacterized a "lease" as a conditional sale because the contract contemplated rental payments in excess of the value of the "leased" equipment. Id. at 259. The court went on to enumerate additional factors supporting the conclusion that the contract actually created a security interest:
 
 
 13
 (1) The lessee was required to provide insurance against loss, theft, damage, and destruction of the leased equipment.
 
 
 14
 (2) The lessee was required to bear the entire risk of loss, theft, damage, or destruction and no such loss would relieve the lessee of its obligation to pay rent.
 
 
 15
 (3) The lessee was required to indemnify and hold harmless the lessor from all claims and liabilities arising in connection with the equipment.
 
 
 16
 (4) The lessee was required to pay all charges and taxes imposed upon the ownership, leasing, renting, sale, purchase, possession, or use of the equipment, except taxes based on the lessor's net income.
 
 
 17
 (5) The lessee was required to pay a substantial deposit upon acceptance of the lease.
 
 
 18
 (6) A provision in the contract accelerated rental payments and mandated that the lessee pay attorney fees in the event of default.
 
 
 19
 (7) A provision specifying the supplier of the equipment to be leased suggested that the lessor purchased the equipment specifically for lease to this lessee.
 
 
 20
 Id. at 260.
 
 
 21
 The rental payments in the present case also exceeded the value of the "leased" equipment. The district court found that the purchase price of the games was $60,000 while the payments due under the "lease" came to $74,880. We think it fair to conclude that the $74,880 total represented the fair market value of the "leased" property plus a financing charge. We note that each of the additional factors influencing the outcome in Leasing Service also appears in this case.
 
 
 22
 The contract expressly required Entertainment (1) to insure against risk of loss, p 4; (2) to bear the risk of loss yet remain beholden for any outstanding rent, p 3; (3) to indemnify Citi-Lease against any liability, p 9; (4) to pay all charges and taxes except Citi-Lease's income or franchise taxes, p 5; and (5) to pay a $6,000 "advance rental and security deposit." p 16. In addition, the contract (6) provided for the payment of attorney fees and the acceleration of rental payment in the event of default, paragraphs 7, 10, and (7) specified that Benzar, Inc. was to supply the games with delivery at Entertainment's expense, p 3. These factors militate strongly in favor of construing the contract as creating a security interest.[6]
 
 
 23
 Citi-Lease nevertheless points to contractual provisions specifying that Citi-Lease retain title to the games and that Entertainment return the games to a location of Citi-Lease's selection. Citi-Lease argues that these provisions necessitate a finding that the transaction created a lease. We disagree. A lessor's retention of title is not determinative:
 
 
 24
 "It is true that the lease specifically provides that "[t]he equipment is, and shall remain, the property of lessor," and that "[l]essee shall have no right, title or interest in or to equipment except as expressly set forth in this lease." (p 19) Nevertheless, taking into account the provisions of the lease as a whole, and in reliance not on any one of them but on the comprehensive character of the transactions at issue, this court finds that these transactions were not true leases, but rather conditional sales."
 
 
 25
 Id. at 261.
 
 
 26
 Here, the evidence shows that Citi-Lease entered the transaction without any property to lease. Its sole concern was to finance the acquisition of the video games at a profitable return and at a minimum of risk. Accordingly, we hold that the contract gave rise to a conditional sale in which Citi-Lease obtained a security interest.[7]
 
 IV. FAILURE TO PROVIDE NOTICE
 
 27
 Since the transaction involved the conveyance of a security interest, Citi-Lease was obligated to provide reasonable notice that it had repossessed the games and intended to sell them at a private sale. N.J.Rev.Stat. Sec. 12A:9-504(3); see New Jersey Bank v. Green, 145 N.J.Super. 560, 368 A.2d 431, 433 (Camden County Ct.1976). Citi-Lease presented no evidence at trial that it complied with this statutory duty. Indeed, Citi-Lease's collections manager admitted on cross-examination that, to his knowledge, no notice was given.
 
 
 28
 Citi-Lease argues that "the spirit of commercial reasonableness requires that the secured party not be arbitrarily deprived of his deficiency but that the burden of proof be shifted to him to prove that the sale resulted in the fair and reasonable value of the security being credited to the debtor's account." Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402, 404-05 (Ocean County Ct.1971), aff'd, 118 N.J.Super. 521, 288 A.2d 872 (N.J.Super.Ct.App.Div.1972). In Conti, the secured party obtained a deficiency despite its failure to provide notice because the parties had stipulated to the commercial reasonableness of the sale. Conti, 276 A.2d at 405. In contrast, Citi-Lease has failed to submit any evidence that its sale of the games was reasonable.
 
 
 29
 Citi-Lease's own evidence demonstrated that it sold the games to Entertainment's former landlord for $20,000, less than one third of the outstanding debt.[8] Under New Jersey law "when sufficient notice of sale is not given a presumption arises that the collateral is worth at least the amount of the debt...." Franklin State Bank v. Parker, 136 N.J.Super. 476, 346 A.2d 632, 635-36 (Union County Ct.1975); T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J.Super. 328, 258 A.2d 162, 167 (Bergen County Ct.1969). Citi-Lease has offered no evidence to rebut this presumption. In fact, the sale price is significantly less than the original purchase price. Under these circumstances, it would be manifestly unjust to allow Citi-Lease to profit by its own wrongdoing. See T & W Ice Cream, Inc., 258 A.2d at 167.
 
 
 30
 We therefore conclude that the games are presumed to be worth at least the amount the guarantors owed under the contract. Because Citi-Lease departed from the express legislative purpose of N.J.Rev.Stat. Sec. 12A:9-504(3), Citi-Lease must forfeit its right to a deficiency. See Franklin State Bank, 346 A.2d at 636.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Entertainment's incorporation has been dissolved. This action in reality is being maintained against the defendants individually as guarantors
 
 
 [2]
 The guarantors relied upon a Florida Uniform Commercial Code provision that requires the holder of a security interest to notify the debtor of the secured party's intention to sell repossessed merchandise. See Fla.Stat. Sec. 679.504
 
 
 [3]
 Citi-Lease moved to strike the lack of notice defense on the ground that the guarantors had not raised it as an affirmative defense in their answer. Noting the pro se status of the defendants, the court denied the motion to strike and construed the guarantors' pretrial motion to dismiss as a motion to add the affirmative defense of lack of notice
 
 
 [4]
 Sam Corozza was the only guarantor to appear at trial. The district court had previously excused the others because the court anticipated that the testimony of each guarantor would be identical. Accordingly, the court denied Citi-Lease's motion for default judgment against the non-appearing defendants
 Citi-Lease argues that this was error. We disagree. A judge may not enter a default judgment for a defendant's failure to appear so long as the defendant filed an answer denying an element of the plaintiff's claim. See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 400 n. 2 (5th Cir. Unit A 1981) (plaintiff must still prove his case).
 
 
 [5]
 Upon questioning, Citi-Lease's counsel informed the court that he had failed to submit any memorandum of law on this issue. The court ordered Citi-Lease's complaint stricken for Citi-Lease's failure to obey the court's order that all memoranda of law be filed five days before the pre-trial conference. Citi-Lease also appeals from this ruling
 Citi-Lease argued at trial that it was not reasonable for the court to expect a pre-trial memorandum of law on the security interest issue because the guarantors had first pleaded the notice defense at trial. The record reflects, however, that prior to trial the guarantors had twice filed pro se pleadings in which they complained of Citi-Lease's failure to provide notice and cited Florida's U.C.C. notice statute. Since we affirm this case on the district court's alternative holding, we need not address whether the court erred in striking the complaint.
 
 
 [6]
 No factor is conclusive standing alone. "Each transaction must be viewed on its facts, bearing in mind the code's abhorrence of secret liens." J. White & R. Summers, Uniform Commercial Code 880-883 (2d ed. 1980)
 The parties have presented no data concerning the useful life of the leased equipment and the contract does not contain an option to purchase. This was also the situation confronting the court in Leasing Service. Nevertheless, that court similarly held that the contract before it gave rise to a security interest.
 
 
 [7]
 We find additional corroboration for this conclusion in the fact that the defendants personally guaranteed performance
 
 
 [8]
 The contract provided for 24 monthly payments of $3,120 for a total of $74,880. Entertainment's breach occurred three months into the contract at which time $65,520 was still owing