ORIX CREDIT ALLIANCE, INC.,
Plaintiff–Appellant,

v.

James PAPPAS and Parashevic Pappas,
Defendants–Appellees.

No. 90–3147.

United States Court of Appeals,
Seventh Circuit.

Argued May 17, 1991.

Decided Oct. 25, 1991.

**1260**

Michael J. O'Rourke (argued), Frank J. Kokoszka, Brian E. Neuffer, Michael J. Collins, Winston & Strawn, Chicago, Ill., for plaintiff-appellant.

Nathaniel Ruff (argued), Lesniak & Ruff, East Chicago, Ind., Robert J. Rooth, Adler & Rooth, Chicago, Ill., for defendants-appellees.

Before COFFEY, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Pursuant to two separate agreements, Orix Credit Alliance, Inc., leased six trailers—four Fruehauf trailers and two Timpte grain trailers—to Orlando Cartage, Inc. Orlando became bankrupt and defaulted on payment due under the leases. Orix sued James Pappas and Parashevic Pappas as guarantors. The Guarantors concede liability under the Fruehauf agreement but argue that the agreement is a sales agreement with a retained security interest and that Orix's assessment of damages is incorrect. Orlando retained possession and use of the Timpte trailers under the provisions of a settlement agreement with Orix and court order whereby Orlando would make full payment of outstanding sums owed and pay all future rent installments.

With regard to damages on default, the leases provide a late charge of $\frac{1}{15}$ of 1% per day on delinquent payments, collection expenses and attorney fees at the rate of 15% of the delinquent balance, and acceleration of the debt on default. Orix was given the option to sell the trailers (and apply the net proceeds of the sale less 20% of the actual cost of the trailers to the unpaid balance of the total rent) and Orlando remained liable for any deficiency. Orix sold the Fruehauf trailers at auction for $60,250.00.

Orix calculated the damages under the leases as follows:

*Fruehauf Agreement:*

| | |
|---|---|
| Lease balance upon default | $73,250.45 |
| Interest to date at late charge rate of 24% | $22,763.45 |
| | $96,013.90 |
| Auction sale proceeds | $60,250.00 |
| —20% total rent | (25,114.44) |
| | $35,135.56 |
| | $60,878.34 |
| Costs of sale | 6,988.69 |
| *Total* : | $67,866.03[1] |

---

**1.** The correct figure should be $67,867.03.

*Timpte*
*Lease:*

| | | |
|---|---|---|
| Lease balance at present | | $10,182.90 |
| Purchase option, plus taxes | | 5,579.25 |
| *Total:* | | $15,762.15 |

*Attorney*
*Fees:*

| | | |
|---|---|---|
| (16,056.58–$3,500 credit) | | $12,556.58 |
| *Aggregate Total:* | | $96,184.76 |

---

After considering evidence submitted by the parties concerning damages, the district court concluded that the Fruehauf agreement was a conditional sale. The court determined that the Guarantors are liable to Orix for $19,981.14 (deficiency less auction proceeds and plus auction expenses) under that agreement and allowed late charges of 24% on that amount from the date of the sale of the trailers. Orix was awarded attorney fees of 15% of the overall figure. The district court denied Orix any damages for Orlando's default of the Timpte lease because the agreed order provides that Orlando would make full payment of the outstanding sums owed and remain current on future rent installments and therefore no debt exists under the guaranty.

Orix appeals the district court's characterization of the Fruehauf agreement as a conditional sale and the court's assessment of damages.[2]

*Conditional Sale or True Lease*

The parties agree that New York law governs here. Pursuant to § 1–201(37) of the New York Uniform Commercial Code, whether a lease is intended as security (thus a conditional sale) is to be determined by the particular facts of each case.

■ While the inclusion of an option to purchase in a lease does not in and of itself make the lease one intended for security, where the lessee can become the owner of the leased goods for only nominal consideration at the expiration of the lease the transaction is in substance a conditional sale and should be treated as such. *Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1142 (7th Cir.1982).

■ To determine whether an option price represents nominal consideration, it can be compared to the total rental price of the equipment. *Matthews v. CTI Container*, 871 F.2d 270, 275 (2d Cir.1989). As the district court noted, the range of determinations of what constitutes "nominal consideration" under this comparison is broad. *See e.g., National Equipment Rental v. Priority Electronics*, 435 F.Supp. 236 (E.D.N.Y.1977) (2.7% of the total rental value was nominal); *In re Crown Cartridge Corp.*, 220 F.Supp. 914 (S.D.N.Y.1962) (7.7% was nominal); *In re Oak Mfg., Inc.*, 6 U.C.C.Rep. 1273 (S.D.N.Y.1969) (9% of the total rental value was nominal); *In re Herold Radio & Electronic Corp.*, 218 F.Supp. 284 (S.D.N.Y.1963), *aff'd* 327 F.2d 564 (2d Cir.1964) (10% was nominal).

■ Under the Fruehauf agreement, Orlando had an option to purchase the four trailers after the 54–month agreement term for $15,648.00. The original price of the trailers when purchased by Orix was $104,320.00. We do not agree with the district court's determination, however, that a comparison of these amounts is unhelpful to the present case because the option price is 12% of the total rental price

---

**2.** We reject Orix's argument that the district court improperly considered whether the agreement is a conditional sale because the Guarantors expressly waived all defenses to their liability and promised due performance of the contractual terms as agreed and payment of Orlan-

do's debt to Orix. Although the Guarantors concede liability, they contest Orix's calculation of damages. An analysis of the agreement was necessary to determine what constitutes due performance and the nature and extent of Orlando's debt.

and just outside of the courts' range. While not dispositive, the comparison should be considered as a factor in determining whether the agreement is a conditional sale.[3]

An option price may also be found to be nominal where it is insubstantial in relation to the fair market value of the leased goods at the time the option arises as anticipated by the parties when the agreement was executed. *Marhoefer*, 674 F.2d at 1144–45; *Guardsman Lease Plan, Inc. v. Gibraltar Transmission Corp.*, 129 Misc.2d 887, 494 N.Y.S.2d 59, 63 (N.Y.1985). However, the parties have failed to present valuable evidence as to what the fair market value of the trailers would be at the expiration of the agreement.[4]

The extent to which the total rentals exceed the purchase price of the trailers may also be an indication that the transaction is a sale. *National Equipment*, 435 F.Supp. at 239; *Guardsman*, 494 N.Y.S.2d at 64. The purchase price of the Fruehauf trailers was $104,320.00, while the total rental payments under the agreement are $125,572.20. Therefore, the rentals exceed the purchase price by approximately 20%. We agree with the district court's conclusion that the total rental payments may represent the fair market value of the trailers plus a financing charge.

Similarly, the Guarantors submitted an affidavit of a Certified Public Accountant showing that the present value of the total amounts to be paid under the agreement, including the monthly payments, "advance rent" and option price, was $105,649.37, using an implied interest rate of 13.6%. The affiant asserted that that present value was essentially equivalent to the $104,320.00 purchase price of the trailers and therefore the transaction can be viewed as a conditional sale with the monthly payments under the agreement being installment payments containing principal and interest portions.

New York courts have recognized a number of factors within an agreement that may indicate a conditional sale, many of which are present here. *See Matthews*, 871 F.2d at 275–76; *Guardsman*, 494 N.Y.S.2d at 63–64. Under the Fruehauf agreement, Orlando bore the risk of loss or damage of the trailers. Orlando was obligated to repair the trailers at its own expense, to maintain insurance on the trailers, and to pay all charges and taxes on the "ownership, leasing, renting, sale, purchase, possession or use of the equipment" during the agreement term. In addition, Orlando paid $10,464.35 in "advance rent" under the agreement. *See Credit Car Leasing Corp. v. DeCresenzo*, 138 Misc.2d 726, 525 N.Y.S.2d 492, 496 (N.Y.City Civ. Ct.1988) (down payment for goods was a factor indicating a conditional sale). Another significant factor is Orix's requirement of a guaranty executed by a third party. *Guardsman*, 494 N.Y.S.2d at 64.

Moreover, the fact that the agreement contains a provision for the sale of the trailers upon default and for the liability of Orlando for any deficiency also indicates that the transaction is a secured transaction. *Matthews*, 871 F.2d at 275–76; *Guardsman*, 494 N.Y.S.2d at 64. However, it has been held that such costs are necessarily borne by one party and therefore they reflect less the true character of the transaction than the strength of the

---

**3.** By the end of the agreement term, Orlando would have paid $125,572.20 for the use and possession of the trailers. Arguably, Orlando would have had no sensible alternative but to exercise the option. *Guardsman Lease Plan, Inc. v. Gibraltar Transmission Corp.*, 129 Misc.2d 887, 494 N.Y.S.2d 59, 63 (N.Y.1985).

**4.** We reject Orix's bare assertion that the option price represents the parties' estimation of the fair market value of the trailers at the end of the agreement. Also, Orix's argument that the residual value, calculated as 20% of the total rentals, is equal to the fair market value of the trailers at the expiration of the agreement has no merit because that amount was included to compensate Orix for a default during the agreement term and remains the same throughout the term.

parties' respective bargaining positions. *Marhoefer,* 674 F.2d at 1145–46.

■ Although the agreement provides that Orix retained all property rights in the trailers and expressly granted to Orlando no "right, title or interest" in or to the trailers, such language has been held not to be determinative of whether the lessee acquired any equity in the "leased" property. *Citi–Lease Co. v. Entertainment Family Style, Inc.,* 825 F.2d 1497, 1500 (11th Cir. 1987).

■ In *Citi–Lease,* the court found it significant that the lessor entered the transaction without any property to lease. The court concluded that the lessor's sole concern was to finance the acquisition of property at a profitable return and at a minimum of risk and determined that the transaction was a conditional sale. *Id.* at 1500–1501. *See Guardsman,* 494 N.Y.S.2d at 63–64. Orix did not own the Fruehauf trailers when it agreed to lease them to Orlando and purchased them from the supplier as a condition of the agreement. This arrangement suggests that Orix merely arranged a financed sale of the trailers for Orlando. The district court properly concluded that the Fruehauf agreement was a conditional sale rather than a true lease.

*Damages*

■ The district court calculated the deficiency owed by the Guarantors by taking the unpaid balance upon default, $73,250.45, and subtracting the auction proceeds less expenses, $53,261.31, for a total of $19,981.14. The court added late charges to that figure of 24% from the date of the sale of the trailers. The parties agree that the district court erred in ordering that late charges be assessed from the date of the sale and that the proper assessment of late charges should be *from the date of default to the date of the sale.* Therefore, Orix correctly argues that late charges should be assessed on the total unpaid balance on the date of default *before* subtracting the auction proceeds less expenses. *See Leasing Service Corp. v. Carbonex, Inc.,* 512 F.Supp. 253, 259–60 (S.D.N.Y.1981); *Leasing Service Corp. v. Broetje,* 640 F.Supp. 51, 54 (E.D.Wash. 1986).

■ Orix claims that the district court erred in refusing to award $25,114.44 (20% of the actual cost of the trailers) as compensation for the residual value of the trailers under the agreement. The district court relied on *Carbonex,* 512 F.Supp. at 260, to deny these damages. In *Carbonex,* the court held that the justification for such a deduction "rests on the characterization of [the] transaction as [a] true lease." *Id.* Similarly, the district court rejected Orix's argument that *Leasing Service Corp. v. Justice,* 673 F.2d 70 (2d Cir. 1982) supports the set-off on the basis that *Justice* allowed such a set-off in a *lease* context. As we have noted, the 20% of total rentals does not necessarily reasonably approximate the residual fair market value of the trailers at the expiration of the agreement term because it was calculated to compensate Orix for a default during the term and because it remains the same throughout the term. In addition, as Guarantors assert, Orix presumably sold the trailers at auction for their fair market value and therefore Orix has been compensated for any remaining interest.

■ Finally, the district court properly denied Orix any damages for Orlando's default of the Timpte lease. The settlement agreement provides that Orlando would make full payment of the outstanding sums owed to Orix and remain current on future rent installments. Therefore, if Orlando satisfies the order approving that agreement there is no debt due and owing under the guaranty. We reject Orix's argument that the entire debt was accelerated upon default. Orix is adequately protected under the Timpte lease; by the terms of the guaranty, the Guarantors remain liable for any of Orlando's future unsatisfied debts.

Subject to the modification that the late charges under the Fruehauf agreement be assessed from the date of the default to the date of the sale on the unpaid balance on the date of default, the judgment of the district court is AFFIRMED.