**In re Judge HARDY, d/b/a J & M Communications, Debtor.**

**Bankruptcy No. 92 B 2755.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 11, 1992.

Kevin Murnighan, Carey, Filter, White & Boland, Chicago, Ill., for American Beeper Co.

Richard Goldman, Robert Coe & Associates, Northbrook, Ill., for debtor.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on American Beeper Company's ("ABC") motion to require the debtor, d/b/a J & M Communications, to assume or reject its leases with ABC. For the reasons stated below, the Court grants ABC's motion and gives the debtor 28 days to assume or reject the ABC lease.

### FACTS

ABC is an air time provider/lessor of beepers. Between May 23, 1991 and July 2, 1991, ABC leased a total of 1,100 beepers to J & M for 20–month periods at a rate of $6.50 per beeper per month, for a total payment of $130 per beeper for the term of the lease. The lease agreements are identical for all beepers and provide in pertinent part:

3. RENTAL: ... All rents shall be paid without ... set-off of any amount whatsoever. The operation and use of the leased equipment shall be at the sole risk of Lessee, and not of Lessor, and the obligation of Lessee to pay rent hereunder shall be unconditional.

4. DESTRUCTION OF LEASED EQUIPMENT. If any leased equipment is totally destroyed, the liability of the Lessee to pay rent therefor may be discharged by paying to Lessor all the rent due thereon, plus all the rent to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. Except as expressly provided in this paragraph, the total or partial destruction of any leased equipment, or total or partial loss of use or possession thereof to Lessee, shall not release or relieve Lessee from the duty to pay the rent herein provided.

7. TAXES. Lessee agrees that, during the term of this lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee and Lessor in the leased equipment ...

8. TITLE OF THE LESSOR. Title to the leased equipment shall at all times remain with the Lessor ...

10. DEFAULT. ... (b) all sums due and to become due hereunder shall become payable forthwith, and the Lessor, in addition to being entitled to take possession of the leased equipment as hereinbefore described, also shall be entitled to recover immediately as and for damages for the breach of this lease ... an amount equal to the difference between the aggregate rent reserved hereunder for the unexpired term of the lease ...

15. IRREVOCABILITY. This lease is irrevocable for the full term hereof as set forth hereinabove and for the aggregate rentals herein reserved hereinabove set forth and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or for any other reason ...

21. OPTION TO PURCHASE. Lessor hereby gives Lessee the option to purchase the leased equipment specified on Schedule 1 upon the expiration of the full term of this lease for the sum of one dollar ($1) per beeper set identified on Schedule 1, provided however this option to purchase is subject to the following conditions precedent ...

On February 6, 1992, the debtor filed a petition under Chapter 11 of the Bankruptcy Code. No trustee has been appointed in the Chapter 11 case. Accordingly, the debtor has continued to run his business as a debtor in possession.

Prior to the Chapter 11 case, the debtor defaulted on its lease obligations. Accordingly, on June 26, 1992, ABC filed a Motion to Extend Time to Determine Dischargeability of a Debt and a Motion to Assume or Reject Leases, seeking to set a date for the debtor to either assume or reject its leases with J & M. Both ABC and the debtor have briefed the question of whether the beeper leases are true leases or disguised secured transactions. ABC's motion is now before the Court for decision.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) as a matter arising under 11 U.S.C. § 365. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as a matter involving the administration of the estate. The matter is before the Court under Local Rule 2.33 of the United States District Court for the Northern District of Illinois, automatically referring bankruptcy matters to this Court for hearing and determination.

## DISCUSSION

■ The issue the Court must decide is whether the agreements between ABC and the debtor for the use of the beepers are true leases or disguised security instruments. If the agreements are true leases, then, under § 365 of the Bankruptcy Code, the debtor must assume or reject the unexpired leases.[1] If the agreements are security interests, the beepers are part of the debtor's bankruptcy estate, and ABC is a secured creditor, subject to any rights the debtor in possession may have to avoid ABC's security interests in the beeper. Naturally enough, ABC argues that the agreements are true leases. It wants the Court to set a date for the debtor to assume or reject the leases under § 365. The debtor, on the other hand, claims that the agreements are in fact sales with a reservation of title in ABC for security, and

---

1. Section 365 provides in pertinent part:
(a) ... the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor.
(b)(4) ... if there has been a default in an unexpired lease of the debtor, ... the trustee may not require a lessor to provide services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated ...

therefore the agreements are not subject to assumption or rejection under § 365.

The determination of whether the agreements between the debtor and ABC are true leases or security agreements is governed by § 1-207(37) of the Illinois Commercial Code, which provides in relevant part:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater that the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(y) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into . . . [2]

---

**2.** This section of the Illinois Commercial Code was revised in 1990. The pre-1990 section provided in relevant part:

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration."

In determining if an agreement which purports to be a true lease is instead a disguised security agreement, the majority of courts have focused on three factors: (1) whether the "lessee" is required to make aggregate rental payments to the "lessor" equalling the cost of the leased property plus interest; (2) whether the option price to purchase the leased equipment at the end of the "lease" is nominal; and (3) whether the lease term covers the total useful life of the equipment. *See, e.g., In re Hispanic American Television Co., Inc.,* 113 B.R. 453 (Bankr.N.D.Ill.1990); *In re Loop Hospital Partnership,* 35 B.R. 929 (Bankr.N.D.Ill.1983); *In re Triple B Oil Producers, Inc.,* 75 B.R. 461 (S.D.Ill.1987); *Matter of Marhoefer Packing Company, Inc.,* 674 F.2d 1139 (7th Cir.1982); *Orix Credit Alliance, Inc. v. Pappas,* 946 F.2d 1258 (7th Cir.1991). *But see, Carlson v. Tandy Computer Leasing,* 803 F.2d 391 (8th Cir.1986) (most important factors are who retains title to the equipment and whether the lessee is under a duty to purchase the equipment).

Under the test used by the majority approach, the Court first must determine whether the debtor was obligated to pay ABC the full purchase price of the beeper plus an interest charge over the term of the alleged lease. The agreement between ABC and the debtor requires the debtor to pay ABC a total lease price of $130 per beeper. In his deposition, Robert Leonardis, the president of ABC, testified that ABC purchased the beepers it leased to the debtor for $152.09 per beeper.[3] It is clear that the debtor is required to make rental payments to ABC for the duration of the lease that are less than the purchase price of the beepers. Thus, one of the central tenets of finding a security agreement instead of a lease has not been met.

The next question is whether the one dollar per beeper purchase option price at the end of the lease period is nominal. Under the Illinois Commercial Code, whether a price is nominal is determined by comparing the option price to the fair market price of the goods at the time when the option is to be exercised. *Hispanic American Television Co.,* 113 B.R. at 459. Leonardis testified at his deposition that the fair market value of a 20–month old beeper was approximately $1 because beeper technology advances at a rapid pace, the market for beepers is dynamic, and that the typical beeper will break down approximately once per year. Judge Hardy, on the other hand, testified in his deposition that the current market price for used beepers is $25 per beeper. However, Hardy did not explain where the $25 price came from or what types of beepers it applied to.[4]

In *Hispanic American Television Co.,* where the court did have to determine whether the purchase option price was nominal, the court relied heavily on testimony about how the price was fixed and the relative experience of the parties. In that case, the court decided that the lessor's projection of the fair market price was more persuasive since the lessee's projection might have been influenced by his consideration of the value to him of maintaining the equipment as opposed to temporarily shutting the business and replacing the equipment. *Hispanic American Television Co.,* 113 B.R. at 459. However, in the case before this Court, there is no testimony or evidence on which the Court can rely. Thus, *Hispanic American Television Co.* also provides little guidance to the Court.

3. In his deposition, Judge Hardy, the owner of the debtor, testified that he had purchased similar beepers from ABC for $106 per beeper. It is unclear to the court what degree the beepers the debtors referred to in his deposition are "similar" to the beepers now before the court. Therefore, the court gives no weight to the debtor's testimony in this regard.

4. In *Marhoefer,* the Seventh Circuit suggested that, under certain circumstances, a one dollar purchase option price was conclusively nominal. *Marhoefer,* 674 F.2d at 1142. This court does not believe those circumstances have arisen here. The property involved in *Marhoefer,* sausage stuffers, obviously differs greatly from the beepers involved here in value terms. In any case, *Marhoefer* is distinguishable from the instant case because *Marhoefer* did not involve the issue of whether a purchase option price was nominal.

This Court concludes that the one dollar purchase option price is nominal. At the outset, the debtor apparently could buy the beepers for $152.09. After the debtor pays $130 to lease the beeper for 20 months, he could then buy the same beeper for $1. While there is little evidence in the record about the actual value of the beepers at the end of the lease, it is hard to conclude that the one dollar option purchase price is of any significance in the context of an item that originally cost $152.09, regardless of whether the actual value of the beepers is the $25 suggested by the debtor, the $22.09 difference between the original purchase price and the lease payments, or some other number. In addition, the fact that the rental in the last month of the lease is six and one half times the option purchase price strongly suggests the option price of one dollar is nominal. *See, e.g., Orix Credit Alliance, Inc. v. Pappas*, 946 F.2d 1258, 1261 (7th Cir.1991). Thus, because the purchase option price is nominal, this second factor in the majority approach points toward the treatment of this transaction as a disguised secured transaction.

Finally, the Court must determine whether the agreement between ABC and the debtor covers the total useful life of the beeper. Both parties agree that a 20-month old beeper is not tossed on the trash heap. Instead, an old beeper can be refurbished and resold or relet. Thus, the old beeper would have a value to ABC. If the debtor chose not to exercise the one dollar option purchase at the end of the lease period, the debtor would be returning beepers to the lessor that would have significant value in the real world. This scenario suggests the agreement between the parties is a true lease.

In addition, the Court must consider the totality of the facts of this case. *In re Hispanic American Television Co., Inc.*, 113 B.R. 453, 457 (Bankr.N.D.Ill.1990).

Considering the realities of ABC's business, the Court must conclude that ABC truly intended only to lease the beepers to the debtor. Since ABC receives less than its capital outlay in leasing its beepers, ABC must rely on its provision of air time to its lessees in order to make a profit. It appears that the low rental payments are an incentive to beeper users to lease both their beepers and their air time from ABC. Thus, ABC would not have intended to sell the beepers to the debtor, since if the debtor owned the beepers, it could have changed the beepers' frequency and purchased its air time from a different air time supplier to ABC's detriment. Therefore, the Court finds that the parties intended a true lease.

On balance, the factors used in the majority approach lead the Court to conclude that the agreements between ABC and the debtor are true leases. Although the option purchase price is nominal, the debtor's rental payments are less than what ABC paid for the beepers. Furthermore, the agreement between ABC and the debtor does not cover the total useful life of the beepers.[5] The realities of the beeper air time provider business reinforce this conclusion. Therefore, the debtor can and should be required to assume or reject these leases before taking a plan to confirmation. ABC's beepers are the debtor's most important asset.[6] Without the beepers, the debtor is out of business. The debtor has been in Chapter 11 for more than seven months. It is not unreasonable at this point to require the debtor to commit to its ability to reorganize or not by assuming or rejecting the leases within the next 28 days.

## CONCLUSION

For the reasons stated above, the Court finds that the agreements between the debtor and ABC are true leases. Accord-

---

5. The court places little weight in the fact that the debtor has assumed all risks and paid all taxes on the beepers, since this most likely is a result only of the bargaining strength of the parties rather than their intent. *See, e.g., Marhoefer*, 674 F.2d at 1145.

6. The beepers are an asset of the debtor in the sense it has a possessory right in those beepers under the leases.

ingly, ABC's motion is granted, and the debtor is ordered to assume or reject these leases within 28 days of the entry of this order.